## YEMIKER v. NESBITT.

---

PATENTS; INTERFERENCE; JOINT INVENTORS; REDUCTION TO PRACTICE; DILIGENCE.

1. In an interference proceeding, the junior party has the burden of establishing his claims.    (Following *Nicoll* v. *Hoey, ante,* 245.)

2. In an interference proceeding, the mere assertion of the junior party that his adversaries were not joint inventors because they failed to show when and where they conceived the invention is not sufficient to overcome the testimony of one of them that they were joint inventors, and of a fourth party to the effect that the invention was explained to him by both of such joint inventors. (Following *Lemp* v. *Randall,* 33 App. D. C. 430.)

3. In an interference involving the invention of a collapsible metal core composed of sections upon which a pneumatic tire may be molded, and containing two counts, both counts were construed as limited to a tapered ring, and it was accordingly *held* that the disclosure of one of the parties to his adversary of a structure which did not reveal such a ring was not a disclosure of the invention of the issue.

No. 1188. Patent Appeals.    Submitted November 19, 1918.    Decided December 2, 1918.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference proceeding.        ·    *Affirmed.*

The facts are stated in the opinion.

*Mr. F. W. Bond* and *Mr. Parker Cooke* for the appellant.

*Mr. William F. Hall* for the appellees.

Mr. Chief Justice SMYTH delivered the opinion of the Court:

From a decision of the Patent Office awarding priority of invention to James H. Nesbitt and John C. Lauritzen as joint inventors of a collapsible metal core composed of sections upon which a pneumatic tire may be molded, John Yemiker appeals. The counts of the interference are:

"1. A core of the character described comprising a plurality of separable sections having inwardly extending portions provided with grooves which, in the assembled condition of the sections, provide an annular channel, and an annular wedge ring insertible in said channel, and adapted to be held therein by friction.

"2. A core adapted to have tire shoes and casings built and vulcanized thereon, said core including an annulus comprising an outer main body and an inwardly extending flange having an enlarged marginal portion providing shoulders perpendicular to the faces of the flange, said annulus being formed of a plurality of sections and said enlarged portion of the flange having a channel therein opening out through one of the side faces of the same and also being provided with spaced apart openings leading from the bottom wall of said channel through the opposite face of said enlarged portion and a ring adapted to be forced into said channel as and for the purpose described."

John Yemiker is the junior party; therefore he has the burden of establishing his claim. *Nicoll* v. *Hoey, ante,* p. 245.

He asserts that the appellees are not joint inventors, because they failed to show when and where they conceived the invention. Nesbitt testified that they were joint inventors, and the witness Herdman said that the invention was explained to him by both of them. Against this there is no evidence. Under the rule in *Lemp* v. *Randall,* 33 App. D. C. 430, Yemiker's contention must be rejected.

Yemiker claims that he conceived the invention in 1912. The Commissioner's analysis of the testimony on this point makes it clear that he did not. But even if he did, he lacked diligence in reducing the invention to practice. His application for a patent was not filed until January, 1915, more than two years after his alleged conception; and he made no reduction to practice prior to that, unless the production of a core by the Williams Foundry and Machine Company under the direction of Nesbitt in January, 1913, constitutes such a reduction. He claims that it does, and bases his argument upon the assertion that he had revealed the invention to Nesbitt before the core was manufactured, and that the reduction to practice resulting from its manufacture inured to his, Yemiker's, benefit. Perhaps this would be so if he had disclosed his invention to Nesbitt, but he had not.

Nesbitt, Lauritzen, and Yemiker were employees of the Foundry & Machine Company. Yemiker admits that the core was made under Nesbitt's direction, but contends that sometime before he had explained to Nesbitt how he, Yemiker, "was going to strengthen the core with a ring taper on one side straight on the other in order to draw sections together," and at the same time made and handed to Nesbitt a pencil sketch of the invention. In this he has no corroboration. Nesbitt denies it, but admits that he had a conversation with Yemiker about the time mentioned, in which the latter told him of "a core with wedges, and a ring fastened on same, square, but not to fit tight in cavity." This answers the description of a structure covered by a patent issued to Yemiker on an application filed in the previous August. It does not describe a tapered ring, which constitutes the chief feature of the invention under consideration. The admission fails to embrace the issue. With the admission out of the way, Yemiker's claim of disclosure to Nesbitt is left without sufficient support.

Moreover, the Foundry & Machine Company built and sold after January, 1913, a number of cores embodying the invention. Yemiker was aware of this. When asked if he made any claim to the company that the core was his invention he

answered that he told the foreman that he "did not think very much of people that would take an idea away from another man." But the foreman denies this. However that may be, Yemiker did nothing beyond this to protect his interests until he filed his application, nearly two years afterwards. In the meantime, on March 6, less than two months after the first core was built under Nesbitt's direction, Nesbitt and Lauritzen filed their application for a patent. It is not believed that if Yemiker at that time regarded himself as the inventor he would have remained silent and inactive so long. There are many other circumstances tending to show that he did not make a disclosure to Nesbitt and hence that the manufacture of the core in January was not a reduction to practice of Yemiker's invention. They are dwelt upon in the respective opinions of the Examiner of Interferences and the First Assistant Commissioner, and it would serve no useful purpose for us to set them forth here.

The Examiners in Chief found for the appellant. As we read their opinion, it turns upon the construction of count 2. They held that this count does not call for a taper on the ring, and that Yemiker's disclosure to Nesbitt, which is admitted by the latter, satisfies the terms of this count. In this we think they have erred. We agreed with the Assistant Commissioner "that count 2, like count 1, must be construed as limited to a tapered ring." Yemiker seems to concur in this, albeit his statement in that regard is not very clear; for he says in his brief that while "count 2 does not call for a tapered ring in a positive way, however, a ring adapted to be forced into said channel found in count 2 might imply the condition, and not the positive element." Construing count 2 as calling for a tapered ring, the admission of Nesbitt that Yemiker revealed to him a structure described in a patent issued to Yemiker which does not reveal such a ring becomes immaterial, and the ground upon which the examiners based their opinion disappears.

We are of opinion that the First Assistant Commissioner was right, and, in consequence, his decision awarding priority to Nesbitt and Lauritzen is affirmed.          *Affirmed.*